OPINION OF THE COURT
Patricia D. Marks, J.
*633 This is a decision on a motion by defendants Gerald Cropper, Kevin Smith, and John Snyder challenging the constitutionality of specific provisions of the Sex Offender Registration Act (Correction Law § 168 et seq.). This decision presents a unique issue of law with respect to the challenge to the constitutionality of the acts and procedures of the Board of Examiners of Sex Offenders in arriving at its classification recommendation and the challenge that such Board exceeded its authority (Correction Law § 168-l [6]).
Defendant Gerald Cropper was convicted of sexual abuse in the first degree arising from a December 1991 incident involving sexual contact with a four-year-old girl. On August 14, 1992 the defendant was sentenced to probation. He subsequently violated the conditions of probation and was sentenced to a period of State incarceration. He is currently eligible for parole release. The Board of Examiners of Sex Offenders has made a recommendation of a level one classification and Monroe County Court Judge John J. Connell has so classified the defendant.
Defendant Kevin Smith was convicted of rape in the first degree on January 14, 1993 involving an attack on a 17-year-old girl. He was sentenced to State incarceration with a minimum period of two years and a maximum period of six years. He is currently eligible for parole release. The Board of Examiners of Sex Offenders has made a recommendation of a level two classification and Monroe County Supreme Court Justice Donald J. Mark has so classified the defendant.
Defendant John Snyder was convicted of sexual abuse in the first degree involving sexual contact by defendant with four young males, ages 7, 8, 9 and 11. He was initially sentenced to probation. He violated the terms of probation and was sentenced to a period of State incarceration. He is eligible for release to parole supervision on January 5, 1997. The Board of Examiners of Sex Offenders has made a recommendation of a level three classification and this court has so classified the defendant. Defendant Snyder successfully challenged the factual basis for two categories within the risk assessment instrument. However, the over-all assessment still resulted in a determination of a level three classification for Snyder.
In each case, the defendant was assigned counsel and given an opportunity to be heard prior to the court assigning a classification level. Hearings were conducted on the classification of each defendant.
The court concludes that a hearing is not required on the issues raised in these motions in that a hearing has been held *634 with respect to each defendant’s classification and there is no factual dispute of the underlying facts associated with defendants’ claims and requests for relief.
The court has directed that all papers associated with this matter remain captioned respectively as People v Gerald Cropper, People v Kevin Smith and People v John Snyder as there has been no appropriate application for the change by defendants Cropper and Smith and all three cases are matters of public record (CPLR 2101 [c]; People v Sailor, 65 NY2d 224 [1985]; Piccarreto v State of New York, 144 AD2d 920 [4th Dept 1988]). Defendants Cropper and Smith in unilaterally submitting papers for the proceeding with the anonymous "Doe” caption and defendant Snyder in applying for an anonymous caption erroneously rely on the permanent injunction issued by the United States District Court with respect to the public notification provisions of the Sex Offender Registration Act (see, Doe v Pataki, 940 F Supp 603 [SD NY 1996]). The holding of the Federal District Court was limited to the public notification pursuant to the Correction Law and not the actual classification proceeding. These defendants are not entitled to any privacy with respect to this public proceeding (see, Judiciary Law § 4; Matter of Gannett Co. v De Pasquale, 43 NY2d 370 [1977]). The court’s "discretion to limit the public nature of judicial proceedings is to be 'sparingly exercised’ ” (People v Jortes, 47 NY2d 409, 413 [1979]). There is also nothing in the Federal District Court decision which precludes this court from maintaining the public record nature of the proceeding.
The defendants also challenge the risk assessment instrument utilized by the Board and the constitutionality of the manner in which the classification occurs. They each seek an order finding that the risk assessment conducted by the Board of Examiners of Sex Offenders violates due process and equal protection rights under the New York State and United States Constitutions (US Const 5th, 14th Amends; NY Const, art I, §§ 6, 11; Correction Law § 168 et seq.). They further request that the court find the risk assessment instrument violative of the Board’s authority and an abuse of discretion under the Sex Offender Registration Act (Correction Law § 168 et seq.).
The law provides for the creation of a Board of Examiners of Sex Offenders which must within 60 days prior to an offender’s release to parole make a risk assessment and recommendation to the sentencing court (Correction Law § 168-Z [6]). The Board must consist of three sex offender treatment experts employed by the Division of Parole and two members from the Depart *635 ment of Correctional Services (Correction Law § 168-/ [1]). The statute provides the Board with discretion to "develop guidelines and procedures to assess the risk of a repeat offense by such sex offender and the threat posed to the public safety” (Correction Law § 168-/ [5]). In making its recommendation, the Board is to consider a statutory list of several specific factors prior to assigning a risk level to the offender (ibid).
With respect to defendant Cropper, this court concludes that since he has been classified at the lowest risk level, this defendant lacks standing to challenge either the classification or the manner in which it was derived (see, Warth v Seldin, 422 US 490 [1975]; Asian Ams. for Equality v Koch, 72 NY2d 121 [1988]). Defendant Cropper has not shown that he is harmed in any way by the system employed.
With respect to defendants Smith and Snyder, the defendants were each assigned an attorney and given an opportunity to be heard (Correction Law § 168-n). Defendant Smith was classified as a level two offender. Defendant Snyder successfully challenged the factual basis for two categories within his risk assessment, however the resulting classification remained that of a level three offender. In arriving at the individual determinations, the sentencing court utilized the Board of Examiners of Sex Offenders’ risk assessment instrument and summaries as well as comments by counsel and the defendants. The recommended classification levels were derived from an instrument which was prepared consistent with the legislative intent and the appropriate discretion to develop guidelines and procedures provided by the statute (Correction Law § 168-/). The primary purpose of the statute is to alert law enforcement, parents and communities to the presence of convicted sex offenders due to "the danger of recidivism posed by sex offenders” (L 1995, ch 192, § 1; see also, Bill Jacket to L 1995, ch 192). The law explicitly provides for the development of a process for such classification through the use of guidelines (Correction Law § 168-/). The risk assessment instrument is merely the codification of those guidelines in a uniform and detailed document. Pursuant to the legislative direction, the Commissioner of the Division of Criminal Justice Services proceeded with great care to develop an instrument which would be objective and conform to the criteria set forth in the legislation (see, Correction Law § 168-/ [5]; affirmation of Commissioner of Division of Criminal Justice Services Paul Shechtman, submitted in Doe v Pataki, 919 F Supp 691 [SD NY 1996]). The development of the specific risk assessment *636 instrument included consultation with a national expert and author on the subject of adult sex offenders, reference to guidelines that other States had adopted and academic publications. The Board of Examiners of Sex Offenders consulted with the expert and made revisions in conjunction with the goal of objective criteria which would produce uniform and objective results. A panel of professionals with diverse and in depth experience in the field of adult sex offenders then reviewed and tested the guidelines and recommended improvements. These guidelines were then circulated for comments from professionals. This court cannot imagine a more thorough and complete process to develop and implement a fair and objective assessment instrument that would meet the goal of the legislation.
The court would thus conclude that the identical challenges to the risk assessment instrument by defendants Smith and Snyder are denied. This court finds that there is no due process or equal protection violation under the State or Federal Constitution (US Const 5th, 14th Amends; NY Const, art I, §§ 6, 11). The weighing of the numerous factors and the opportunity for mitigating factors, overrides, and departures are clearly set forth in the law and vest the court with the authority to set an appropriate level of classification after it has allowed the defendant an opportunity to be heard and represented by counsel and after the court has "review[ed] any victim’s statement” and any information submitted by the defendant (Correction Law § 168-n [3]). Thus the court would conclude that the procedures of the Board of Examiners of Sex Offenders violate neither the defendant’s Federal nor State constitutional rights nor does such procedure exceed the authority granted by the legislation (Correction Law § 168-Z).
Defendants claim that the notification, classification, and registration requirements of the Sex Offender Registration Act as applied to them violate the prohibition against the enactment of ex post facto laws in that their criminal conduct occurred well before the effective date of the statute (US Const, art I, § 10, cl [1]). With respect to notification, the law provides for different degrees of notification depending on the classification of the offender. For level one offenders, the law provides for notification of the defendant’s address to the law enforcement agency where the offense occurred and if different the agency where the defendant will be residing (Correction Law § 168-Z [6] [a]). For level two offenders, the law provides that local law enforcement agencies may supply an "approximate address based on sex offender’s zip code, a photograph of the of *637 fender, background information including the offender’s crime of conviction, modus of operation, type of victim targeted and the description of special conditions imposed on the offender to any entity with vulnerable populations related to the nature of the offense committed by such sex offender” (Correction Law § 168-Z [6] [b]). For level three offenders, the law provides for the creation of a "sexually violent predator subdirectory” which is to be given annually to local police agencies (Correction Law § 168-q [1]). Information within the subdirectory is to include "exact address and photograph of the sex offender along with the following information, if available: name, physical description, age and distinctive markings * * * crime of conviction, modus of operation, type of victim targeted, and a description of special conditions imposed on the sex offender” (ibid). Police agencies may also provide information on level three offenders to institutions with vulnerable populations (Correction Law § 168-Z [6] [c]). When the Sex Offender Registration Act became effective, identifying information about all level offenders was to be publicly available through a directory accessed by a "900” telephone number (Correction Law § 168-p). Since an injunction was also issued with respect to the "900” telephone number directory, defendants are currently not subjected to any form of public notification (see, Doe v Pataki, 940 F Supp 603, supra). Since the United States District Court has issued an injunction related to the public notification provisions of the statute, there is no need for this court to reach the merits of defendants’ challenges to the public notification provisions on the grounds that they violate the Ex Post Facto Clause since no actual public notification exists (US Const, art I, § 10, cl [1]; Doe v Pataki, supra, at 605). While this court is not bound by the decision in Federal District Court (People v Kin Kan, 78 NY2d 54 [1991]), any ruling on the issue would be moot.
The court finds that the classification and registration provisions of the Sex Offender Registration Act are not punitive but remedial and involve ministerial acts that do not constitute punishment (see, Colder v Bull, 3 US 386 [1798]; Doe v Pataki, supra, at 605; People v Afrika, 168 Misc 2d 618 [Sup Ct, Monroe County 1996]). Although the Federal District Court commented that classification now serves no purpose, this court concludes that judicial efficiency is better served by classification at this time in that it imposes no harm on the defendants and the *638 injunction may be lifted in the future by further court action (Doe v Pataki, supra, at 630; People v Afrika, supra).
Accordingly, defendants’ motions are denied in all respects.