OPINION OF THE COURT
Dominic R. Massaro, J.
Following a jury trial in which he was found guilty of six counts of sodomy in the first degree (Penal Law § 130.50 [1]), one count of attempted sodomy in the first degree (Penal Law §§ 110.00, 130.50 [1]), two counts of sodomy in the second degree (Penal Law § 130.45 [1]), and one count of sexual abuse in the first degree (Penal Law § 130.65 [1]), pursuant to the Sexual Offender Registration Act (hereinafter SORA), the Board of Examiners of Sex Offenders recommends designating Michael Hernandez as a risk level three sexually violent offender upon his release from custody. Although conceding that his total risk factor score is correct, defendant argues at a risk assessment hearing that the totality of the circumstances warrants a departure to a risk level two. Defendant wrongly concludes.
Factual Setting
In People v Hernandez (185 AD2d 147, 148 [1st Dept 1992], lv denied 80 NY2d 930 [1992]), the First Department explained that “[t]he evidence of defendant’s guilt of these crimes committed against five boys, aged eleven to fifteen, whom he persuaded to run away from home and join him in a makeshift shack in the woods near Pelham Bay, was strong and convincing and is not contested on appeal.” In addition, defendant’s rap sheet indicates that: he was 19 at the time of this offense, which occurred on or about October 10, 1986; is incarcerated for SVs to 25 years; and is scheduled to be released by November 7, 2011 at the latest.
On October 23, 2003, the Board submitted a risk assessment instrument. It recommends designating defendant as a sexually violent offender based on his convictions for sodomy in the first degree, attempted sodomy in the first degree, and sexual abuse in the first degree. It also recommends classifying defendant as a risk level three based on an assessed score of 165. Specifically, the Board assessed: 10 points for use of forcible compulsion; 25 *153 points for sexual intercourse, deviate sexual intercourse or aggravated sexual abuse with the victim; 30 points for three or more victims; 20 points for engaging in a continuing course of sexual misconduct; 20 points for the age of the victims being between 11 and 16; 10 points for defendant being 20 years of age or less at the time of his first act of sexual misconduct; 30 points for a criminal history consisting of a prior violent felony, misdemeanor sex crime or endangering the welfare of a child; 10 points for the prior felony or sex crime occurring less than three years before the current incidents; and 10 points for unsatisfactory conduct while confined or supervised.
The Board then compiled a case summary “based upon a review of the inmate’s file which includes but is not limited to the pre-sentence investigation, prior criminal history and post-offense behavior” (risk assessment instrument at 5). This summary stated, in pertinent part, that:
“In 1986, [defendant] was adjudicated a Youthful Offender for Criminal Possession of a Loaded Firearm, a sawed off rifle, and Theft of Services. As a result, he was placed on five years probation. While on probation for that offense, he was arrested for the instant sex offense for which he was convicted after trial . . . Regarding the sex offenses, [defendant], who was nineteen years old at the time, sodomized and sexually abused five young, runaway, boys who were between the ages of eleven and fifteen. The relationship between the offender and the children is not clear, although the boys said they knew him from the neighborhood. Over an approximate two week period, [defendant] fondled the buttocks of many of the boys as well as the penis of each and would rub up against them, to the point where they could feel the defendant’s erection. Additionally, he put his penis into the mouth of at least one victim. He subjected at least one boy to anal sodomy and attempted to do the same to another however, the other boys stopped the offender when they heard the victim screaming. One of the boys stated [defendant] kept a knife nearby and told them he would kill their families if they went home and disclosed the abuse. He also told them he had the powers of the devil and could control them. There is no indication [defendant] was actually armed with the knife during the commission of the crime. All five victims disclosed numerous acts of *154 sex abuse and sodomy committed against them. These acts took place in an abandoned shed in the neighborhood where the boys lived. The children had all apparently run away from home and were living with [defendant] when the police were notified and the arrest made. While incarcerated, . . . [defendant] has thirteen Tier II infractions along with seven Tier III infractions, the latter of which occurred on 2/7/04.” (Id.)
Arguments of Counsel
Defendant argues that despite the fact that he could not overcome his risk assessment score that places him as a level three offender, he is nevertheless not a threat to the community nor a sexual predator. In support of this contention, defendant notes that since being incarcerated in this matter, he has been married, is currently engaged for a second time, has overcome a heroin addiction, and is now much older than at the time he committed these acts. In response, the People contend that the above-mentioned facts do not warrant any departure from designating defendant a level three offender.
Discussion
Pursuant to SORA, the Board developed guidelines and procedures to assess the risk of a repeat offense by a sex offender and the threat that person posed to the public safety. (See Correction Law § 168-Z [5].) Based on these factors, the Board recommends to the sentencing court whether a defendant warrants the designation as a sexual predator, sexually violent offender, or predicate sex offender as defined in Correction Law § 168-a (7), as well as which of three levels of notification the defendant should be assigned based upon “the risk of a repeat offense.” (Correction Law § 168-Z [5].)
“The offender’s risk level determines the amount of information that can be disseminated about him to the public under the Act’s notification procedures . . . [and] the threat posed by a sex offender depends upon two factors: (i) the offender’s likelihood of reoffense and (ii) the harm that would be inflicted if he did reoffend” (Board of Examiners of Sex Offenders, Sex Offender Registration Act: Risk Assessment Guidelines and Commentary, at 1-2 [Nov. 1997] [hereinafter Guidelines]).
The two risk assessment levels that are pertinent to the case at *155 bar are a level two designation if the risk of repeat offense is moderate and a level three designation if the risk of repeat offense is high. (See Correction Law § 168-Z [6] [b], [c].) The notification for these two levels differs in that a level three offender’s exact address and address of his place of employment may be disseminated, whereas a level two offender may only have his approximate address based on his zip code disseminated. (See Correction Law § 168-Z [6] [b], [c].) In addition, pursuant to Correction Law § 168-q (1), as applicable here:
“The division shall maintain a subdirectory of level three sex offenders. The subdirectory shall include the exact address, address of the offender’s place of employment and photograph of the sex offender along with the following information, if available: name, physical description, age and distinctive markings. Background information including the sex offender’s crime of conviction, modus of operation, type of victim targeted, the name and address of any institution of higher education at which the sex offender is enrolled, attends, is employed or resides and a description of special conditions imposed on the sex offender shall also be included. The subdirectory shall have sex offender listings categorized by county and zip code. A copy of the subdirectory shall annually be distributed to the offices of local village, town, city, county or state law enforcement agencies for purposes of public access. The division shall distribute monthly updates to the offices of local village, town, city, county or state law enforcement agencies for purposes of public access . . . The subdirectory provided for herein shall be updated monthly to maintain its efficiency and usefulness and shall be computer accessible. Such subdirectory shall be made available at all times on the internet via the division homepage.”
In determining the risk level, the Board has promulgated 15 factors that are divided into four categories. These factors are based on an individualized approach that is mandated by federal statute (see 42 USC § 14071 [a] [2]), and they are designed to “eschew per se rules [so] that risk should be assessed on the basis of a review of all pertinent factors” (Guidelines at 2). Under each factor the “court should look to the most serious wrongdoing in each category” (Guidelines at 6), and only one of the options is chosen if any are applicable. If the aggregate score from all of these factors is at least 75 points but no greater *156 than 105, the offender is presumptively a risk level two. If it is 110 or greater, he is presumptively a risk level three.
The relevant factors within each category are now reviewed:
1. Current Offense(s). To “be completed on the basis of all of the crimes that were part of the instant disposition” (Guidelines at 5). If the offender used forcible compulsion, as defined in Penal Law § 130.00 (8), 10 points are assigned. “Research on sex offenders shows that the offender’s use of violence is positively correlated with his likelihood of reoffending . . . [and is] also a factor strongly associated with the offender’s dangerousness to the community” (Guidelines at 7). Respecting sexual contact with the victim, if the offender engaged in sexual intercourse or deviate sexual intercourse (as occurred here), or aggravated sexual abuse, 25 points are assigned. If three or more victims were abused or sodomized, 30 points are assigned. “The existence of multiple victims is indicative of compulsive behavior, and is therefore a significant factor in assessing the offender’s risk of reoffense and dangerousness” (Guidelines at 10). If the offender engages in a continuing course of sexual contact with the same victim, 20 points are assigned.
However, the definition of a continuing course of sexual contact under the Guidelines is different than that under the Penal Law. As explained in the Guidelines (supra at 11):
“For purposes of these guidelines an offender has engaged in a continuing course of sexual contact when he engages in either (i) two or more acts of sexual contact, at least one of which is an act of sexual intercourse, deviate sexual intercourse, or aggravated sexual abuse, which acts are separated in time by at least 24 hours, or (ii) three or more acts of sexual contact over a period of at least two weeks.”
“Since the issuance of the original guidelines in January 1996, the legislature has enacted a continuing course of sexual misconduct crime, which reaches conduct occurring over a period of more than three months.” {Id. at 11 n 7; see Penal Law §§ 130.75, 130.80.) The legislative history of the new law makes clear that the three-month period was selected for reasons related to the law of pleadings and particulars — i.e., because court decisions had made it difficult to prosecute sex crimes occurring over a period in excess of three months when the child victim could not specify the precise dates on which the crimes occurred. The history does not suggest that the Legislature believed that *157 repeated crimes occurring over a shorter period — e.g., two weeks — were not a sound basis for finding an offender to be compulsive in his misconduct. Hence, the Board has determined not to modify this guideline.
If the age of the victim(s) is between 11 and 16, 20 points are assigned because “[offenders who target young children as their victims are more likely to reoffend . . . [and] such offenders pose a heightened risk to public safety since young children lack the physical strength to resist and can be more easily lured into dangerous situations than adults” (Guidelines at 11).
2. Criminal History. If the offender was 20 years of age or less at the time of his first act of sexual misconduct, 10 points are assigned because “those who offend at a young age are more prone to reoffend” (Guidelines at 13). In this section, “the term ‘crime’ includes criminal convictions, youthful offender adjudications and juvenile delinquency findings . . . [as] these determinations are reliable indicators of wrongdoing and therefore should be considered in assessing an offender’s likelihood of reoffense and danger to public safety.” (Guidelines at 6-7.) “Although an adjudication as a youthful offender is not a conviction, it constitutes a reliable determination that an offender committed the underlying criminal conduct. People v. Compton, 38 A.D.2d 788 (4th Dept., 1972)” (Guidelines at 7 n 6).
If the offender has a prior criminal history consisting of a prior violent felony, misdemeanor sex crime or endangering the welfare of a child, 30 points are assigned. In addition, 10 points are assigned if the prior felony or sex crime occurred less than three years prior to the instant offense.
3. Post-Offense Behavior. This involves “an assessment of [the defendant’s] conduct while in custody” (Guidelines at 6). If the offender’s adjustment to confinement or supervision has been unsatisfactory, 10 points are assigned. Not surprisingly, “an offender who has incurred serious disciplinary violations in prison poses a heightened risk of recidivism [and] his misconduct bodes ill for his return to the streets” (Guidelines at 16).
4. Release Environment. No points were assigned under this factor, making for a total risk score of 165 presumptive points.
Notwithstanding, this presumed determination by the Board is merely a recommendation. The sentencing court is charged with making the actual determination regarding whether a defendant is a sexual predator, sexually violent offender or predicate sex offender, and if he is to be designated as a risk level one, two or three. (See People v Stevens, 91 NY2d 270 [1998].)
*158 The sentencing court is to use the same factors as the Board in making its determination. (See Stevens, supra; People v Santiago, 2001 NY Slip Op 40450[U] [Sup Ct, Bronx County 2001]; People v Jimenez, 178 Misc 2d 319 [Sup Ct, Kings County 1998]; People v Ayten, 172 Misc 2d 571 [Sup Ct, Queens County 1997].) However, the ability of the sentencing court to depart from the recommendation is:
“premised on a recognition that an objective instrument, no matter how well designed, will not fully capture the nuances of every case ... Of course, . . . [t]he expectation is that the instrument will result in the proper classification in most cases so that departures will be the exception not the rule . . . [Therefore,] the . . . court may not depart from the presumptive risk level unless it concludes that there exists an aggravating or mitigating factor of a kind, or to a degree, not otherwise adequately taken into account by the guidelines.” (Guidelines at 4; see also Matter of Vandover v Czajka, 276 AD2d 945 [3d Dept 2000]; Matter of O’Brien v State of N.Y. Div. of Probation & Correctional Servs., 263 AD2d 804, 805-806 [3d Dept 1999], lv denied 94 NY2d 758 [1999]; Matter of New York State Bd. of Examiners of Sex Offenders v Ransom, 249 AD2d 891, 891-892 [4th Dept 1998] [“The court . . . may depart from that recommendation and determine the sex offender’s risk level based upon the facts and circumstances that appear in the record. The Board, therefore, serves only in an advisory capacity that is similar to the role served by a probation department in submitting a sentencing recommendation”]; Jimenez, supra at 322-323 [“(T)he Legislature did not intend to place upon the criminal courts of this State a burden to act merely as a regulatory body to confirm the determination of the Board . . . (T)he court must make a de novo determination, giving due consideration to the recommendation of the Board”].)
If either the People or the sex offender disagrees with the Board’s recommendation in the sentencing court, the parties shall be afforded a hearing. (See Correction Law § 168-n [3].) In such a hearing,
“[t]he sentencing court has wide discretion with regard to the conduct of the hearing and the type and nature of the testimony and evidence to be *159 considered. Formal rules of evidence are inapplicable to this type of proceeding and reliable hearsay evidence may be utilized to support the court’s final determination.” (People v Salaam, 174 Misc 2d 726, 731 [Sup Ct, NY County 1997]; see also People ex rel. Wohlford v Warden, 184 AD2d 232 [1st Dept 1992]; People v Brasier, 169 Misc 2d 337, 339-340 [Sup Ct, Bronx County 1996] [“(T)he hearing contemplated by this statute does not litigate guilt or nonguilt but: ‘is a summary proceeding which does not trigger strict evidentiary rules or all the procedural safeguards available to a defendant in a criminal action’ . . . The situation herein is more akin to (a) forfeiture (proceeding)”], quoting People v Recor, 209 AD2d 831, 831 [3d Dept 1994], affd 87 NY2d 933 [1996].)
At the hearing, the People bear the burden of proving the facts supporting the determination sought by clear and convincing evidence and,
“[i]n making the determinations the court shall review any victim’s statement and any relevant materials and evidence submitted by the sex offender and the district attorney and the recommendation and any materials submitted by the board, and may consider reliable hearsay evidence submitted by either party, provided that it is relevant to the determinations. Facts previously proven at trial or elicited at the time of entry of a plea of guilty shall be deemed established by clear and convincing evidence and shall not be relitigated.” (Correction Law § 168-n [3]; see also People v David W., 95 NY2d 130 [2000]; Stevens, supra; People v Brooks, 308 AD2d 99, 102 [2d Dept 2003] [court may rely on “information provided in the defendant’s presentence report, information regarding his prior criminal history and information provided by the correctional facility regarding his postoffense behavior, including any disciplinary proceedings brought against him”], lv denied 1 NY3d 502 [2003]; People v Mitchell, 300 AD2d 377, 377 [2d Dept 2002] [“The hearing court properly relied upon its recollection of the plea proceeding, the presentence report, and the case summary of the Board”], lv denied 99 NY2d 510 [2003]; Guidelines at 5 [“Th(e) evidence can be derived from the sex offender’s admissions; the *160 victim’s statements; the evaluative reports of the supervising probation officer, parole officer or corrections counselor; or from any other reliable source. Notably, the Board is not limited to the crime of conviction but considers the above in determining an offender’s risk level”].)
Conclusion
Under SORA, a sexually violent offender is any sex offender convicted of a sexually violent offense, which includes a conviction for sodomy in the first degree, attempted sodomy in the first degree or sexual abuse in the first degree. (See Correction Law § 168-a [1], [3] [a]; [7] [b].) Therefore, defendant, who has been convicted of all of the above-mentioned crimes, has properly been categorized as a sexually violent offender.
Likewise, defendant was properly classified as a risk level three sex offender. This classification was supported by clear and convincing evidence, based on the facts contained in the Board’s case summary and risk assessment instrument, defendant’s rap sheet, the Appellate Division’s decision in this case, and defendant’s own statements. (See generally People v Oquendo, 1 AD3d 421 [2d Dept 2003], lv denied 1 NY3d 599 [2004].) Although no court has ruled on whether an Appellate Division decision can be utilized in making such a determination, in light of the fact that presentence reports, rap sheets, probation, parole and correction department reports, case summaries of the Board, statements by victims and defendants, and courts’ own recollections have all been held to be reliable (see Brooks, supra; Mitchell, supra; Guidelines at 5), the court cannot fathom the notion that an appellate court’s decision would not be entitled to at least equal if not more weight. In any event, all of the sources in this case establish by clear and convincing evidence that defendant used forcible compulsion (10 points), had deviate sexual intercourse with the victims (25 points), five victims were involved (30 points), there were at least three acts of sexual contact, including deviate sexual intercourse, over at least a two-week period (20 points), and that the victims were between 11 and 16 years old (20 points).
In addition, defendant was 18 at the time of this incident (10 points), and he does not contest that, prior to engaging in the above-mentioned acts, he received a youthful offender adjudication for criminal possession of a loaded firearm, a violent felony *161 offense (30 points). Moreover, that prior incident occurred less than two years beforehand (10 points).
Lastly, the case summary also indicates defendant had disciplinary problems while in custody (10 points). Specifically, “thirteen Tier II infractions along with seven Tier III infractions” (case summary at 5), and as explained in the Guidelines (supra at 16, n 9), “Tier 3 disciplinary violations are the most serious infractions under DOCS’ Three-Tier disciplinary system.” In addition, the alleged changes in defendant’s lifestyle do not provide a basis for a downward departure. (See Stevens, supra.) Therefore, defendant was appropriately assessed a total of 165 points and classified as a risk level three, and the court so finds.
Ordered that defendant is hereby adjudicated a risk level three sexually violent offender.